IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHERRY LARRAINE BIBBS,                    )    CIVIL ACTION NO. 9:15-2229-MBS-BM
                                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )    **REPORT AND RECOMMENDATION**
                                          )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )
                                          )
                    Defendant.            )
_____)

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[1] on August 15, 2012 (protective filing date), alleging disability beginning August 8,

2012, due to lower back problems, both legs giving out, an inability to walk, and a right arm problem

(numbness from the shoulder down). (R.pp. 11, 158, 166, 209). Plaintiff's claims were denied both

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue,
No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot
establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he]
can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542,
2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.
1999)[Discussing the difference between DIB and SSI benefits].



initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on November 26, 2013. (R.pp. 21-45). The ALJ thereafter denied Plaintiff's claim in a decision issued January 16, 2014. (R.pp. 11-20). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be remanded to the Commissioner for further proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

2



<u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws v. Celebrezze</u>, 368 F.2d 640 (4th Cir. 1966)); <u>see also</u> <u>Hepp v. Astrue</u>, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. <u>Laws</u>, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty years old at the time of the ALJ's decision, has a high school education and has past relevant work experience as a hair braider, cafeteria manager, office clerk, and combination cashier and stocker. (R.pp. 19, 25, 158, 204, 210). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of cervical degenerative disc disease, lumbar degenerative disc disease with nerve root compression, and obesity;

---

[2] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. § 404.1521(a); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140–142 (1987).



(R.p. 13); she nevertheless retained the residual functional capacity (RFC) to perform sedentary work[3] with limitations of only occasional postural activities; no climbing of ladders, ropes, or scaffolds; avoidance of concentrated exposure to temperature extremes and work hazards; and the need for a sit/stand option every 45 minutes to an hour. (R.pp. 14-15). At step four, the ALJ found that Plaintiff could not perform any of her past relevant work with these limitations. (R.p. 19). However, the ALJ obtained testimony from a vocational expert and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy, and was therefore not disabled during the period at issue. (R.pp. 19-20).

Plaintiff asserts that in reaching this decision, the ALJ erred because he did not explain his findings regarding her RFC as required by SSR 96-8p, failed to properly evaluate her credibility, and failed to properly assess the opinion evidence. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## Medical Records

Plaintiff's medical records show that on February 27, 2012 (six months before Plaintiff alleges her medical impairments became disabling), at Lowcountry Orthopaedics, Plaintiff received a right L5-L6 and L6-S1 transforaminal epidural steroid injection. (R.p. 323). Plaintiff was later

---

[3]Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).



treated at Moncks Corner Medical Center emergency room for chronic back pain on July 10, 2012. Naproxen, Flexeril, and Prednisone were prescribed. (R.pp. 266-267). She was then treated at the Franklin Fetter Family Health Center on July 26 and August 16, 2012 for complaints of back, shoulder, and neck pain. (R.pp. 278-279). Plaintiff asserts that her condition had become disabling by this point in time. On October 31, 2012, lumbar spine x-rays showed worsening (as compared to September 2010 images) of anterolisthesis of L4 on L5 with disc space narrowing, while cervical spine x-rays indicated that Plaintiff had only moderate degenerative spondylosis and degenerative disc space narrowing at C3-4, C5-6, and C6-7. (R.pp. 292-294).

On December 6, 2012, Dr. Temisan L. Etikerentse performed a consultative examination for purposes of determining disability. Plaintiff complained of worsening back pain of several years duration, and stated that her pain was a 10 on a 10 point scale. Even so, Plaintiff stated that she had not undergone any physical therapy, nor had she had an MRI or any "shots in her back". She had had some x-rays, which were noted in the report history. On examination Plaintiff was found to be obese, she had normal range of motion of her cervical, thoracic and lumbar spine, and normal range of motion of her upper extremities. Plaintiff also advised that she did not need to use a cane or any assistive device to ambulate, and she was able to get on and off the examination table without difficulty. Straight leg raising test was negative on the left, but was positive at about sixty degrees on the right. No additional motor or sensory deficits were noted. Dr. Etikerentse assessed Plaintiff with lumbosacral radiculitis, and opined that "for now" Plaintiff would have problems with prolonged standing, walking, bending, and lifting. Dr. Etikerentse also noted paresthesia involving Plaintiff's right arm and x-ray evidence of degenerative disc disease of Plaintiff's cervical spine, and he recommended MRI imaging in light of her presentation. (R.pp. 300-302). See Richardson v Perales,



402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability].

On January 7, 2013, state agency physician Dr. Stephen Wissman reviewed Plaintiff's medical records and opined that Plaintiff could perform a range of light work[4] with limitations of occasionally lifting and/or carrying twenty pounds; frequently lifting and/or carrying ten pounds; and standing, walking, and sitting about six hours in an eight-hour day. He opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and should never climb ladders, ropes, or scaffolds. (R.pp. 51-52).

On March 1, 2013, Dr. William Corey of Lowcountry Orthopaedics wrote that Plaintiff had presented with a longstanding history of lower back pain which radiated into her right leg and only got relief when she was leaning forward or lying down. Even so, on examination Plaintiff was noted to be well developed and in no apparent distress with 5/5 (full) strength throughout. She exhibited positive straight leg raise to the right lower extremity with radiation down her leg, and complained of pain to palpation of the lower spine. Dr. Corey diagnosed spondylolisthesis of L4 on L5 and scoliosis. (R.pp. 306-308).

On March 7, 2013, Plaintiff was seen by Dr. Christopher Merrell at Lowcountry Orthopaedics for complaints of lumbar pain, more prominent on the right. She reported her pain was worse when standing, and that she felt better when leaning left and sitting. Contrary to what Plaintiff had indicated to Dr. Etikerentse, Plaintiff advised Dr. Merrell that she had had physical therapy in the

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



past, which she said had provided only "minimal" relief. She had an antalgic gait with a limp, moderate spasms in her lower back and right sacroiliac, and buttock pain with palpation. Lumbar range of motion was limited with pain and she had positive straight leg raise test on the right, but her lower extremity strength was normal bilaterally, she had normal lower extremity and paraspinous muscle tone, and her x-rays were noted to show only mild scoliosis and degenerative disc disease with an "incidental" lower thoracic compression fracture. (R.pp. 309-311).

On March 13, 2013, a lumbar spine MRI revealed a "moderate" circumferential disc bulge at L4-L5, as well as "severe" bilateral degenerative facet hypertrophy with associated degenerative grade I anterolisthesis. There was resulting severe bilateral neural foraminal stenosis with compression of the bilateral L4 nerve roots within the neural foramina, slightly more severe on the right. Plaintiff had only mild degenerative changes at L3-L4 and L5-S1, and her lumbar spine had normal alignment without evidence of compression deformity or subluxation. (R.pp. 313-314). Plaintiff received a transforaminal epidural steroid injection on March 27, 2013. (R.p. 316).

On April 15, 2013, Plaintiff complained to Dr. Merrell at Lowcountry Orthopaedic about low back pain, more prominent on the right side; pain radiating to her right lateral calf and the top of her foot; and that an epidural steroid injection did not yield any long-lasting relief. Plaintiff's range of motion was limited by pain, straight leg raise was positive on the right, and she had tenderness with palpation. Plaintiff was advised to "start PT for core strength" and to follow-up in two to three weeks for an assessment. (R.pp. 334-336).

On April 16, 2013, state agency physician Dr. Hugh Wilson reviewed Plaintiff's medical records and findings and opined that Plaintiff could perform a range of sedentary work with restrictions of occasionally lifting and/or carrying ten pounds, frequently lifting and/or carrying less



than ten pounds, standing/walking about two hours in an eight-hour day, and sitting about six hours in an eight-hour workday. He thought that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; should never climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to extreme cold, extreme heat, and hazards. (R.p. 77).

On July 29, 2013, Plaintiff was assessed by Dr. Merrell at Lowcountry Orthopaedics with right radicular pain and lumbar back pain. There is no indication that Plaintiff had followed-up with any physical therapy (as had been recommended by Dr. Merrell at her last visit). Instead, a notation was again made that PT in the past had provided only minimal relief.[5] Plaintiff stated that Aleve helped somewhat, and that she felt better when leaning or sitting as opposed to standing. It was noted that an MRI showed L4/5 anterolisthesis with associated facet arthropathy and facet effusions with foraminal narrowing at that level bilaterally, and an EMG/NCS of her right lower extremity showed evidence of chronic right L4 radiculopathy. (R.p. 337-339). On August 28, 2013, Plaintiff again reported to Dr. Merrell that she felt better leaning left and sitting, and worse with standing. He referred Plaintiff for a surgical consultation. (R.p. 340).

On September 15, 2013, Plaintiff reported to Dr. Don Stovall (also with Lowcountry Orthopedics) that her symptoms were aggravated by sitting, standing, and walking. Nonetheless, Plaintiff described her condition as being "stable" with only a "moderate" level of severity. On examination Plaintiff had normal paraspinous and lower extremity muscle tone, although she exhibited pain on motion. Dr. Don Stovall, an orthopaedic surgeon, discussed the possibility of Plaintiff undergoing an L4-5 posterior spinal fusion (PSF) and instrumentation, opining that most likely Plaintiff would require surgical intervention due to her significant instability, but Plaintiff was

---

[5]Apparently Plaintiff's statement to Dr. Merrell. (R.p. 337). See also (R.p. 309).



apprehensive about considering surgery for her problem. Plaintiff indicated she would think about her surgical options. Dr. Stovall then discussed addressing Plaintiff's concerns by maximizing conservative care with another injection and use of a back brace. (R.pp. 344-347). A right L4-L5 transforaminal epidural steroid injection was administered on October 30, 2013. (R.p. 319).

On November 25, 2013, Plaintiff complained to Dr. Merrell at Lowcountry Orthopaedics about right radicular pain and lumbar back pain. She reported that she felt better leaning and sitting, and worse with standing. Plaintiff reported pain with lumbar range of motion and exhibited positive straight leg raise test on the right. As before, her paraspinous and lower extremity muscle tone was normal, and she had normal lower extremity strength bilaterally. Her lower extremity neuromuscular was also normal. Dr. Merrell advised Plaintiff not to work at that point until the problem was corrected, and that she should see Dr. Stovall (or his scheduler) regarding surgery. (R.pp. 348-349).

## I.

### (RFC and Sit/Stand)

Plaintiff contends that the ALJ erred by failing to explain his findings concerning her RFC, as required by Social Security Ruling (SSR) 96-8p. She specifically claims that the ALJ failed to properly consider her inability to sit for six hours in an eight-hour workday and failed to discuss how long she could stand, how long she would need to stand before she was able to sit for another 45 minutes to an hour, and whether that amount of standing would affect her ability to perform the cited jobs. However, a careful review of the ALJ's analysis and findings fails to substantiate Plaintiff's claim of an improper RFC analysis.



RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). In SSR 96-8p, RFC is defined as a function-by-function assessment of an individual's physical and mental capacities to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours per day, five days per week, or the equivalent. SSR 96-8p, 1996 WL 374184. In evaluating an ALJ's RFC findings, a remand may be appropriate only "where [the] ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir.2015), citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). Such is not the case here. Rather, consistent with SSR 96-8p, the ALJ set forth a narrative discussion of the medical and nonmedical evidence which led him to conclude that Plaintiff had the RFC to perform the range of sedentary work set forth in the decision; (R.pp. 15-18 ); and the undersigned can discern no reversible error in this analysis. Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Blalock, 483 F.2d at 775 [Court required to uphold decision, even if the court disagrees with the decision, if there is substantial evidence in the case record to support]; Hepp, 511 F.3d at 806 [Noting that the substantial evidence standard is less than even a preponderance of the evidence].

In reaching his findings and conclusions, the ALJ gave considerable weight to Dr. Etikerentse's opinion that Plaintiff could have problems with prolonged standing, walking, bending, and lifting. (R.p. 18). As such, Plaintiff's RFC was restricted to only occasional postural activities,



a sedentary level work (which requires only occasional walking and standing), with the requirement that she have a sit/stand option every forty-five minutes to an hour. (R.pp. 14-15). The objective medical evidence, which generally reflects routine, conservative care, supports the ALJ's conclusion that, although Plaintiff's impairments limited her to a reduced range of sedentary work, her impairments did not prevent her from performing all work. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [generally conservative treatment not consistent with allegations of disability]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8<sup>h</sup> Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

The RFC determination is also supported by the opinions of the state agency physicians that Plaintiff could perform *at least* a range of sedentary work.[6] See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; see also Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005) [ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004)[disagreeing with argument that ALJ improperly gave more weight to RFC assessments of non-examining state agency physicians over those of examining physicians]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."]. Notably, although the ALJ gave "some" weight to the opinions of the state

---

[6]As noted, one of the state agency physicians, Dr. Wissman, opined that Plaintiff could perform at the even higher "light" work level. (R.pp. 51-52).

11



agency physicians, it is readily apparent that he gave Plaintiff every benefit of the doubt by assigning her an even more restrictive RFC than found by those physicians based on the evidence received at the hearing level reflecting a greater level of limitation. (R.p. 18). See Marquez v. Astrue, No. 08–206, 2009 WL 3063106, at *4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; see also Siler v. Colvin, No. 11-303, 2014 WL 4160009 at * 5 (M.D.N.C. Aug. 19, 2014) [Same]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records showed].

        Plaintiff argues that the ALJ's RFC finding is flawed because he  incorrectly found that sitting alleviated her pain.  However, although Plaintiff did report to Dr. Stovall that her symptoms were aggravated by sitting (R.p. 344), she also reported to Dr. Merrell on a number of occasions (in March, August, and November 2013) that she felt better when leaning left and sitting (R.pp. 309, 340, 348).  Thus, the ALJ's determination that sitting alleviated Plaintiff's pain is supported by substantial evidence in the case record.  Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; see Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

        Finally, Plaintiff also argues that the ALJ erred in his determination concerning her need for a sit/stand option by failing to discuss how long she could stand, or would need to stand, before she was able to sit for another 45 minutes to an hour, and whether or not that amount of standing would affect  her ability to  perform the cited jobs.  Citing Bryant v. Colvin, No. 1:13-cv-1994 DCN, 2014 WL 3670842, at *14 n. 4 (D.S.C. July 22, 2014), Plaintiff argues that recent



cases in this District have emphasized that SSR 96-9p[7] requires that the ALJ "include the length of time a claimant must stand in exercising a sit-stand option." However, in <u>Bryant</u>, the court found that:

> A plain reading of SSR 96-9p reveals that the ruling **only requires the RFC assessment to specify 'the frequency of the individual's need to alternate sitting and standing.'** Although the ruling provides that the occupational base may be eroded by the length of time the claimant needs to stand, it does not mandate that such information be included in the RFC assessment. SSR 96-9p also states that a vocational resource may be useful in matters involving a sit-stand option. Here, the ALJ consulted with a VE, thereby strengthening the finding that there were jobs in the national and regional economies that Plaintiff could perform with a sit-stand option.

<u>Bryant v. Colvin</u>, 2014 WL 3670842, at *14 (emphasis added, footnote acknowledging other rulings omitted); <u>see also</u> <u>Green v. Colvin</u>, No. 9:14–2195–BHH, 2015 WL 5602623, at *3 (D.S.C. Sept. 23, 2015)[determining that the Magistrate Judge "properly concluded that no greater specific frequency is required when the sit/stand option is 'at will'"]. Here, the ALJ, in accordance with SSR 96-9p, specified that Plaintiff would need a sit/stand option every 45 minutes to an hour. (R.p. 15). The ALJ further included this limitation in his hypothetical to the VE, who identified jobs that such a claimant could perform with this limitation. (R.pp. 40-41). <u>See</u> <u>SSR-00-4p</u>, at * 4 [ALJ may rely on

---

[7]SSR 96-9p provides, in part:

> **Alternate sitting and standing:** An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7.



VE's professional experience]; <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]. Therefore, while additional explanation may have been preferable, <u>Bryant v. Colvin</u>, 2014 WL 3670842, at *14, the undersigned concludes that Plaintiff has failed to demonstrate any reversible error by the ALJ. <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1999) ["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"].

## II.

### (Credibility)

Plaintiff also alleges that the ALJ erred in assessing her credibility. In particular, she claims that the ALJ impermissibly discounted her credibility based on her failure to proceed toward surgical intervention at the time of the hearing when the surgical recommendation was only rendered the previous day, found Plaintiff's testimony that she could not sit for very long less than credible based on treatment records that indicated Plaintiff's pain was alleviated by sitting down when the records did not state this, incorrectly discounted her credibility because the record did not include physical therapy notes when she did not attend physical therapy, and failed to consider the qualifications Plaintiff had on her activities of daily living in concluding that her activities were inconsistent with a finding of disability. This argument is without merit.

The record in this case demonstrates that Plaintiff suffers from several severe impairments primarily related to degenerative lumbar and disc disease, impairments which the ALJ found could reasonably be expected to cause some of her alleged symptoms. However, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were



not entirely credible based on her activities of daily living, her subjective complaints to her physicians, the treatment notes, and inconsistencies in the record. (R.pp. 15-18). In doing so, the ALJ discussed and evaluated both the medical records *and* Plaintiff's testimony, which is exactly what the ALJ is supposed to have done. He was not required to simply accept Plaintiff's subjective statements as to the limiting effects of her impairments when juxtaposed with conflicting or contradicting medical evidence. See SSR 96–7p, 1996 WL 374186, at *2 [Where a claimant seeks to rely on subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Here, the ALJ's credibility determination and assignment of Plaintiff's RFC is supported by the evidence as a whole. Although Plaintiff testified at the hearing that she was unable to do anything (R.pp. 18, 27), the ALJ found that this testimony was inconsistent with the record, including her function report (R.p. 18, 217, 219-220). In her function report, Plaintiff wrote that she was able to take care of her two year old all day, that her only problem with personal care was that her pain caused her arm to go numb, that she did all of the housework even though it was "hard", that she drove a car, was able to shop in stores for grocery and household items once or twice a week, that she cooked, and even went to basketball and football games every Friday. (R.pp. 16, 18, 220). See Johnson v. Barnhart, 434 F.3d at 658 [Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities];



15

Mastro v. Apfel, 270 F.3d at 178 (4th Cir. 2001). Similarly, records from the Franklin Fetter Family Health Center noted that Plaintiff could make meals and did her own shopping. (R.p. 278).

With respect to Plaintiff's argument that the ALJ impermissibly discounted her credibility because the record contains no physical therapy notes; Plaintiff's Brief at 19; the record reflects that even though Plaintiff reported to Dr. Merrell that physical therapy in the past had resulted in only minimal pain relief; (see R.pp. 309, 334, 337, 340); she had told Dr. Etikerentse that she had not undergone physical therapy. (R.p. 300). In any event, the ALJ correctly noted that there are no physical therapy notes in the record. (R.p. 18). There is no reversible error in this statement. Plaintiff's complaint about the ALJ's discounting her credibility based on her failure to schedule surgery, despite claiming that her condition without surgery was disabling, also fails to show any reversible error. Contrary to Plaintiff's assertion that the ALJ erred in doing so because the recommendation for surgery was made only a day before the hearing, Plaintiff's medical records indicate that surgery was recommended by Dr. Stovall on September 15, 2013 (R.p. 344, see R.p. 348), more than two months prior to the hearing. Plaintiff has not asserted she had considered or scheduled surgery since that time, that she later scheduled surgery, nor has she submitted any records indicating that surgery was performed so as to challenge this conclusion.

When objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96–7p, 1996 WL 374186, at *1; Craig v. Chater, 76 F.3d 585 (4th Cir. 1996) ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; and after a review of the record and

16



evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. <u>Ables v. Astrue</u>, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant."](citing SSR 96-7p); <u>Bowen</u>, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment]; <u>Jolley v. Weinberger</u>, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. <u>Smith v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

   While Plaintiff points to what she considers to be evidence sufficient to support her claim of disability, she has established no reversible error in the ALJ's treatment and consideration of the medical and opinion evidence cited in her brief. <u>Guthrie v. Astrue</u>, No. 10-858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), <u>adopted by</u>, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; <u>Kellough v. Heckler</u>, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the [Commissioner's] dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]. Therefore, Plaintiff's credibility argument is without merit.

17



## III.

### (Opinion Evidence)

Plaintiff's final argument is that the ALJ erred by failing to specify the weight he assigned to Dr. Merrill's November 25, 2013 opinion, in which Dr. Merrill advised Plaintiff not to work until her back problem was corrected and to call Dr. Stovall to schedule fusion surgery.  She also appears to argue that the ALJ should not have granted more weight to Dr. Etikerentse's opinion because it stated that recommendations should be based on MRI evidence and then lesser weight was given to a treating physician's opinion that came after the MRI evidence.  See Craig, 76 F.3d at 589-590 [Noting importance of treating physician opinion].

Contrary to Plaintiff's assertions, however, the ALJ adequately considered treating physician Dr. Merrell's statement that Plaintiff should not work until she had back surgery.  The ALJ specifically discussed this statement, but found that it was not sufficient to establish disability, noting that it was not even clear whether Dr. Merrell was just indicating that Plaintiff should not return to her previous job until she had this surgery.  The ALJ further concluded that the statement supported a finding that Plaintiff could be expected to return to her previous work once she had surgery and her back problem was corrected.  (See R.p. 18, 348).  However, consistent with this statement, and as Plaintiff has not had any back surgery, the ALJ did not find that she could return to her past work.  Instead, he limited her to a restricted range of sedentary work based on her current level of functioning as shown by the medical evidence.  Dr. Merrell's own treatment notes support the ALJ's determination that Plaintiff could perform a range of sedentary work.  See (R.pp. 309-311, 348-349).  Notably, at the time that he advised Plaintiff not to work until her problem was corrected, his treatment notes showed that she walked with a normal gait, had normal posture, had normal lower



extremity and paraspinous muscle tone, she was free of spasm, had symmetric reflexes at her knees and ankles, and had normal bilateral lower extremity strength. (R.p. 349). In any event, a determination of whether an individual is "disabled" or "unable to work" is a decision reserved to the Commissioner. (R.p. 27). See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(d)[" A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."].

The ALJ's decision to discount Dr. Merrell's statement is further supported by the lack of any disabling functional limitations from any of Plaintiff's other physicians. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]. Dr. Corey noted on March 1, 2013 that Plaintiff had 5/5 (full) strength on examination, even though Plaintiff contends she had been totally disabled for some seven (7) months by that time. (R.pp. 306-308); see Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that [he] suffers from pain which precludes [him] from substantial gainful activity."]. The ALJ also gave considerable weight to the opinion of consulting physician Dr. Etikerentse (R.p. 18, 302) and incorporated his findings (that Plaintiff would have problems with prolonged standing, walking, bending, and lifting) into his



RFC determination.  See Richardson, 402 U.S. at 402 [assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability].  Dr. Etikerentse's opinion was based on positive straight leg raise testing and on x-rays which showed anterolisthesis of L4-L5 with narrowing of the disc space.  Even so, Dr. Etikerentse's findings on examination did not reflect any condition of a disabling severity.  (R.pp. 300-302).

While Plaintiff is correct that Dr. Etikerentse thought that he would benefit from an MRI; (R.p. 302); Plaintiff underwent an MRI in March 2013, and in April 2013 Dr. Merrell noted that Plaintiff's MRI showed L4/5 anterolisthesis, with associated facet arthropathy and facet effusions and foraminal narrowing.  (R.p. 334).  Dr. Merrill's findings of November 2013 (noted hereinabove) obviously post-date this MRI (R.pp. 348-349).  Additionally, the ALJ's decision to discount Dr. Merrell's statement is supported by the findings of the state agency physicians, as discussed above, to which the ALJ accorded some weight.  In opining that Plaintiff could perform at least a range of sedentary work, state agency physician Dr. Wilson considered Plaintiff's March 2013 lumbar spinal MRI.  (R.p. 78-79).

In sum, after careful review of the record, the undersigned can find no reversible error in the ALJ's treatment of Dr. Merrell's findings and opinion in conjunction with the overall record in this case, and this claim of error is therefore without merit.  Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001)["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"].


**Conclusion**

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 2, 2016
Charleston, South Carolina



21

**Notice of Right to File Objections to Report and Recommendation**

    The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

    Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

<div align="center">

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

</div>

    **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

